**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN P. RYAN,                  :        CIVIL ACTION NO.
     Plaintiff,              :        3-08-cv-1296 (JCH)
                                :
v.                              :
                                :
JOSEPH W. JASKIEWICZ,           :        MAY 18, 2010
     Defendant.              :

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 36)**

**I.      INTRODUCTION**

Plaintiff, Shawn P. Ryan, a firefighter employed by the town of Montville,

Connecticut from 1988 until his termination in July 2007, brought this action pursuant to

sections 1983 and 1988 of Title 42 of the United States Code against Joseph W.

Jaskiewicz, Mayor of Montville, in both his individual and official capacities, alleging that

Jaskiewicz violated Ryan's constitutionally protected rights by unlawfully terminating

Ryan's employment.  See Complaint ("Cmplt.") (Doc. No. 1).  Specifically, Ryan claims

that he was terminated in retaliation for protected speech in violation of the First

Amendment of the United States Constitution, and that his termination constitutes

discrimination against the class of persons suffering from the disease of alcoholism in

violation of the Equal Protection Clause of the Fourteenth Amendment of the United

States Constitution.

Jaskiewicz now moves the court for summary judgment.  See Motion for

Summary Judgment ("Mot. for Summ. Judg.") (Doc. No. 36).  For the reasons that

follow, Jaskiewicz's Motion for Summary Judgment is granted.

## II.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 252 (1986)).

III.   **FACTUAL BACKGROUND**[1]

Plaintiff, Shawn Ryan, was hired as a firefighter by the Town of Montville on October 3, 1988.  See Defendant's Local Rule 56(a)(1) Statement ("L. R. 56(a)(1) Stmt.") at ¶ 1. Among the essential job duties of being a firefighter are maintaining a valid driver's license (Type 102 with endorsement Q) and EMT B certification, being free from mental disorders which would interfere with the performance of firefighting duties, and cultivating effective and courteous working relationships with officials, staff, and the public.  Id. at ¶¶ 2-6.

A.     Ryan's Prior Disputes with the Town of Montville

In 2001, Ryan was involved in off-duty conduct with coworkers that resulted in Ryan bringing suit against his coworkers and the Town of Montville.  Id. at ¶ 7.  This case was ultimately settled by the Town's insurer, and Ryan withdrew his lawsuit on May 28, 2004.  Id. at ¶ 8.

On July 28, 2005, Ryan wrote to the defendant, Mayor Jaskiewicz, seeking compensation for his service in the Connecticut National Guard pursuant to Connecticut General Statute section 7-461.  Id. at ¶ 11.  In August 2005, Ryan was informed that the Town of Montville would compensate Ryan for his service, and Ryan never filed a grievance concerning his claim for compensation.  Id. at ¶¶ 12, 13.

On June 23, 2006, Ryan filed a Notice of Claim for Compensation for Heart and

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties and supported by evidence as true, and resolves disputed facts in favor of the party against whom the motion under consideration is made.

Hypertension with the Workers' Compensation Commission, but no action has yet been taken on the claim.  Id. at ¶ ¶ 1415.[2]

      B.     Ryan's Arrests

          1.     May 31, 2006 Arrest

On May 31, 2006, Ryan was arrested for Disorderly Conduct and Assault in the Third Degree after a domestic dispute between Ryan and his wife.  Id. at ¶¶ 17,18. After this incident, the Town fo Montville required Ryan to provide a "fitness for duty note" from a health care provider in order to address job related concerns regarding Ryan's ability to perform the essential functions of his position, as articulated in the Union contract.  Id. at ¶¶ 19, 20.  Ryan provided the note on June 23, 2006.  Id.

          2.     November 15, 2006 Arrest

On November 15, 2006, Ryan was again arrested following a domestic disturbance.  Id. at ¶ 21, 22.  He was charged with two counts of Assault in the Third Degree, Risk of Injury to a Minor, Disorderly Conduct, and Interfering with an Emergency Call.  Id. at ¶ 21.  On the same date, Ryan was also charged with the motor vehicle violation of evading responsibility for allegedly leaving the scene after striking two mailboxes.  Id. at ¶ 23.  Two days following this arrest, Ryan departed for a two-month military training assignment with the Connecticut National Guard.  Id. at ¶ 24. On January 9, 2007, while Ryan was still on leave performing his training assignment, Jaskiewicz informed him that the Town was requiring that he undergo a mental fitness

---

[2] These three incidents are material to this litigation to the extent that they relate to Ryan's claim that his termination was in retaliation for these occurrences.  In light of the fact that Ryan has withdrawn this First Amendment claim, see infra at 8-9, the court declines to explore these occurrences further.

for duty examination before he could return to work.  Id. at ¶ 25.  From January 19,

2007 (the date upon which Ryan was set to return to his job) until the completion of the

examination, Ryan would be on administrative leave with pay.  Id.  Although the Mayor's

letter to Ryan informed him that his first appointment with Dr. Catherine Lewis was

scheduled for January 22, 2007, Ryan stated that he had begun treatment with Dr.

Lynda Smith, Ph.D.  Id. at ¶¶ 25, 26.  On February 22, 2007, Ryan, the Union's

counsel, and the Town reached an agreement that allowed Ryan to return to duty prior

to the completion of his fitness for duty evaluation.  Id. at ¶ 27.  Pursuant to this

agreement, Ryan would provide a note from Dr. Smith confirming his treatment and

compliance with treatment recommendations on the first of every month, and if Ryan

failed to submit such a note, he could be subject to disciplinary action.  Id.

       3.    March 24, 2007 Arrest

Ryan was arrested and charged with driving under the influence of alcohol on

March 24, 2007.  Id. at ¶ 29.  On March 26, 2007, Jaskiewicz advised Ryan that the

Town was aware of his arrest, and that the Town was assessing the circumstances and

consequences of the incident in order to determine if Ryan would be able to perform the

essential duties of his position, in light of the fact that a valid driver's license (Type 102

with Q endorsement) was required for the job.  Id. at ¶ 30.  As requested, on March 29,

2007, Ryan informed Jaskiewicz that he possessed a valid, qualifying driver's license,

and that there was no DMV hearing scheduled as of that date.  Id. at ¶ 31.

Dr. Smith advised Jaskiewicz that Ryan had tried unsuccessfully to discontinue

drinking on his own, and that Ryan had agreed to seek alcohol treatment.  Id. at ¶ 32.

Although in his Complaint Ryan claimed that he immediately and successfully

completed the alcohol program (resulting in the DUI charge against him being dropped), Ryan did not in fact complete his treatment program until September 13, 2009, due to Ryan's deployment to Iraq, and the DUI charge against him was dropped on October 5, 2009.  Id. at ¶¶ 33, 34.

        C.     Aftermath of March 2007 Arrest

Following the March 2007 arrest, numerous communications were exchanged between the parties.  On May 7, 2007, Jaskiewicz wrote Ryan and informed him both that a valid driver's license was required for his position, and that he had heard that Ryan's license would be suspended as of midnight May 8, 2007.  Id. at ¶ 35.  Within the letter, Jaskiewicz requested that Ryan immediately inform him of any suspensions or restrictions on his driver's license, and whether any hearing concerning his license was scheduled.  Id.  Jaskiewicz also proposed disciplinary action for Ryan's failure to submit reports from Dr. Smith as provided within the agreement that followed Ryan's 2006 arrest.  Id. at ¶ 36.

On May 11, 2007, Ryan informed Jaskiewicz that his driver's license had been suspended for ninety (90) days on May 8, 2007, and further advised that there was a hearing relating to the license suspension scheduled for May 23, 2007.  Id. at ¶ 37. Jaskiewicz responded on May 15, proposing a suspension with pay because Ryan could not drive a fire vehicle pending the Department of Motor Vehicle's review of Ryan's license suspension.  Id. at ¶ 38.  Jaskiewicz also advised Ryan that he failed to comply with the agreement pertaining to his 2006 arrest, and proposed a suspension without pay for five (5) days.  Id.

An agreement was reached between Ryan, the Union's counsel, and the Town's

counsel that provided: (1) there would be no postponement of Ryan's May 23, 2007 DMV hearing; (2) that Ryan would be allowed to use accrued time through May 29, 2007; (3) that Ryan would enroll in the program referenced by Dr. Smith within thirty (30) days, and that treatment notes were to be submitted on the third day of each month, or Ryan would be subject to disciplinary action.  Id. at ¶ 39.  That agreement was amended on May 29, 2007, to provide that there would be no postponement of the now rescheduled June 13, 2006 DMV hearing, that Ryan would be on administrative leave without pay pending the DMV's determination, and that if Ryan's suspension was lifted, Ryan would return to active duty.  If Ryan's suspension was not lifted, the agreement provided that the parties would meet within five (5) days of the DMV decision being issued to determine further action.  Id. at ¶ 40.

On June 22, 2007, Jaskiewicz advised Ryan that, in his view, Ryan did not possess the required qualifications for his position in light of the fact that the DMV hearing had passed and Ryan had not informed the Town of the outcome.  Id. at ¶ 41.  Ryan was also informed that he would be given a chance to respond orally or in writing to the proposed separation from employment on June 29, 2007.  Id.

Ryan requested that the DMV issue him a special work permit that would allow him to drive fire vehicles.  Id. at ¶ 42.  Jaskiewicz signed Ryan's application for a special permit on July 3, 2007, the same day it was submitted.  The DMV issued the Special Motor Vehicle Operator's Permit with endorsement Q, effective July 24, 2007 until August 6, 2007.  Id. at ¶ 47.

On July 25, 2007, Jaskiewicz informed Ryan that he was terminated from his employment due to: (1) inability to perform the essential functions of his position in light

-7-

of the license suspension; (2) postponement of the DMV hearing on multiple occasions; (3) failure to present written notice of the DMV's determination; (4) failure to provide notes from his treating health care provider in a timely manner pursuant to a prior agreement; (5) failure to show participation in an alcohol treatment program; and (6) failure to sign an agreement negotiated on July 9, 2007.  Id. at ¶ 46.  Jaskiewicz claims not to have received the Special Driving Permit at the time of Ryan's termination.  Id. at ¶ 48.  The Town did not oppose Ryan's request for unemployment benefits.  Id. at ¶ 52.

Ryan brought this action against Jaskiewicz on August 25, 2008, alleging that his termination was in retaliation for constitutionally protected speech in violation of the First Amendment, and that his termination constitutes discrimination against alcoholics in violation of the Equal Protection Clause of the Fourteenth Amendment.  See Cmplt. Ryan alleges that he is an alcoholic.  L.R. 56(a)(1) Stmt. at ¶ 55.  Ryan further alleges that Richard Dole, another firefighter for the Town of Montville, was also arrested for driving under the influence, but was not terminated or disciplined by the defendant in a similar manner.  Plaintiff's Local Rule 56(a)(2) Statement ("L.R. 56(a)(2) Stmt.") at 5.

## IV.   DISCUSSION

Ryan brings this action pursuant to 42 U.S.C. § 1983.  To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See 42 U.S.C. § 1983; see also Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997).  There is no dispute in this case that the defendant was acting under color of state law.  Therefore, the court must address whether Jaskiewicz's actions deprived

Ryan of a right, privilege, or immunity secured by the Constitution or laws of the United States. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Thus, the first step in a section 1983 action is to identify the right, privilege, or immunity that has been violated. In his Complaint, Ryan contends that Jaskiewicz's actions violated his rights under both the First and Fourteenth Amendments of the United States Constitution. Each of these claims will be addressed in turn.

A.   First Amendment Claim

In his Complaint, Ryan claims that his termination was "carried out for the purpose of punishing the plaintiff, and retaliating against him, for his persistent exercise of his protected rights to freedom of speech and freedom to petition for redress of grievances, in violation of the First Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code." Cmplt. at 3-4. Specifically, Ryan asserts that Jaskiewicz terminated Ryan in retaliation for the lawsuit Ryan brought against the Town of Montville, the 2005 claim for compensation for Ryan made for his service in the Connecticut National Guard pursuant to Connecticut General Statute section 7-461, and the 2006 claim for workers compensation that Ryan filed.

In his Motion for Summary Judgment, Jaskiewicz argues that Ryan has failed to set forth specific facts that demonstrate there is a genuine issue for trial with respect to each of these elements. See Mot. for Summ. Judg. at 9-18. In his Opposition to the Motion for Summary Judgment, Ryan "concedes the point as to his First Amendment

claim" and asserts that he "will not pursue that claim further."  Opposition to Mot. for

Summ. Judg. (Doc. No. 40) at 2.  In light of Ryan's position, no further analysis of

Ryan's First Amendment retaliation claim is necessary.  Jaskiewicz's Motion for

Summary Judgment is granted as to this claim.

      B.   <u>Equal Protection Claim</u>

In Ryan's second claim against Jaskiewicz, Ryan asserts that his termination

"constituted discrimination against the plaintiff as a member of the class of persons

suffering from the disease of alcoholism who nevertheless remain able to perform all of

their job duties without accommodation, in violation of the Equal Protection Clause of

the Fourteenth Amendment to the United States Constitution as enforced through

Sections 1983 and 1988 of Title 42 of the United States Code."  Cmplt at 4.

The Equal Protection Clause is essentially a direction that all persons similarly

situated should be treated alike.  <u>See</u> <u>Giordano v. City of New York</u>, 274 F.3d 740, 750

(2d Cir. 2001)  (quoting <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439

(1985)).  Construing Ryan's Complaint broadly, the court reads plaintiff's claims as

asserting a violation of the Equal Protection Clause through selective enforcement of

the law.  A selective enforcement claim generally has two elements: (1) the plaintiff,

compared with others similarly situated, was selectively treated; and (2) such selective

treatment was based on impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to

injure a person.  <u>See</u> <u>LaTrieste Restaurant & Cabaret v. Village of Port Chester</u>, 40

F.3d 587, 590 (2d Cir. 1994).

There is considerable dispute between the parties as to which level of scrutiny

the court should apply to the circumstances of this case.  As the United States

Supreme Court has held, in determining whether state action violates the Equal

Protection Clause,

> we apply different levels of scrutiny to different types of
> classifications.  At a minimum, a statutory classification must be
> rationally related to a legitimate governmental purpose.
> Classifications based on race or national origin, and
> classifications affecting fundamental rights, are given the most
> exacting scrutiny.  Between these extremes of rational basis
> review and strict scrutiny lies a level of intermediate scrutiny,
> which generally has been applied to discriminatory classifications
> based on sex or illegitimacy.

Clark v. Jeter, 486 U.S. 456, 461 (1988).  Jaskiewicz contends that, because alcoholics

are not a protected class, Ryan's termination must only be "rationally related to a

legitimate governmental purpose."  Ryan contends, however, that courts have applied

intermediate scrutiny when they review laws that effect important rights, and that

intermediate scrutiny is appropriate here because "although alcoholism may not be a

suspect classification, he has a property interest in his job protected by Fourteenth

Amendment due process."  Opposition at 5.

The court concludes that rational basis review is the appropriate level of scrutiny

to be applied in this case.  Courts that have addressed the level of scrutiny that should

be applied to official action that allegedly discriminates against individuals on the basis

of their alcoholism have consistently determined that rational basis review is

appropriate.  See Gazette v. City of Pontiac, 41 F.3d 1061, 1067 (6th Cir. 1994) ("The

status of being an alcoholic, or a recovering alcoholic, is not a suspect class for equal

protection analysis, and so the lowest level of scrutiny applies to the defendants'

action."); see generally Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280

F.3d 98, 109 (2d Cir. 2001) ("Where disability discrimination is at issue, the Fourteenth Amendment only proscribes government conduct for which there is no rational relationship between the disparity of treatment and some legitimate governmental purpose.").  Although courts have, as Ryan points out, applied intermediate scrutiny in cases that implicate important rights, that line of cases is inapposite.  In Ramos v. Town of Vernon, the Second Circuit grappled with what level of review should be applied to an ordinance that limited minors' rights to free movement and intrastate travel.  353 F.3d 171, 176.  Intermediate scrutiny was applied largely because the ordinance "targets juveniles and we have not yet determined whether children, like adults, possess the right to intrastate travel, or, if they do, how such right is impacted by their age." Id.  In this case, no such ambiguity or uncertainty exists: being an alcoholic is not a suspect class for purposes of the Equal Protection Clause, and rational basis review applies.

Ryan has not set forth specific facts sufficient to demonstrate that the trier of fact need undertake this review.  In order to survive a motion for summary judgment on an equal protection claim, the Supreme Court has held that a plaintiff must offer some evidence of a "discriminatory intent or purpose" on the part of the defendant.  See City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194 (2003).  "Discriminatory intent or purpose" implies that the defendant "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group."  Personnel Administrator v. Feeney, 442 U.S. 256, 279 (1979).  Evidence which merely indicates disparity of treatment, rather than purposeful or invidious discrimination, is insufficient to show discriminatory intent or

purpose.  See McCleskey v. Kemp, 481 U.S. 279, 292 (1987).

Ryan has offered no such evidence that Jaskiewicz's actions were taken with a discriminatory intent or purpose.  Ryan attempts to support his claim with the assertion that Jaskiewicz was in fact aware that Ryan had a valid driver's license.  See Opposition at 5.  Because Jaskiewicz cited Ryan's lack of a license as one of the reasons Ryan was terminated, Ryan contends that refutation of that fact demonstrates a discriminatory intent.  However, although "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination," Ryan's claim with respect to the driver's license is not probative in this case.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000).  Jaskiewicz informed Ryan that he was terminated for his (1) inability to perform the essential functions of his position in light of the license suspension; (2) postponement of the DMV hearing on multiple occasions; (3) failure to present written notice of the DMV's determination; (4) failure to provide notes from his treating health care provider in a timely manner pursuant to a prior agreement; (5) failure to show participation in an alcohol treatment program; and (6) failure to sign an agreement negotiated on July 9, 2007.  L.R. 56(a)(1) Stmt. at ¶ 46.  Even though there is a genuine issue of material fact as to whether Jaskiewicz was aware of Ryan's temporary driver's license, the remaining rationales for Jaskiewicz's decision to terminate Ryan remain unquestioned.  Therefore, even assuming that Jaskiewicz was aware of Ryan's temporary license, Ryan has not put forth evidence that supports an inference of discriminatory intent.

Ryan also supports his claim that his termination constituted discrimination

-13-

against alcoholics with the assertion that, although Ryan was terminated for driving under the influence, Firefighter Richard Dole -- who was also arrested for driving under the influence -- was not terminated.  See L.R. 56(a)(2) Stmt. at 5.  However, Ryan offers no evidence as to whether or not Dole was *himself* an alcoholic or not.  The only facts Ryan sets forth with regard to Dole is that he was arrested for the same crime, but was not terminated.  To create an inference that this disparate treatment constitutes discrimination against the class of alcoholics, however, Ryan would have to set forth facts that show Dole was favorably treated because he was *not* a member of that class.  Ryan has offered no such evidence.  Therefore, because Ryan has not set forth any evidence alleging "discriminatory intent or purpose," Jaskiewicz's Motion for Summary Judgment is granted.

In as much as Ryan so heavily relies on the comparison between the way he was treated by Jaskiewicz and the way another firefighter, Richard Dole, was treated, Ryan's claim could also liberally be construed as a "class-of-one" equal protection claim.  A plaintiff not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim if he shows: (1) he has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment. See Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The Second Circuit has held that, to succeed on a class-of-one claim, a plaintiff must establish:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that

-14-

the defendants acted on the basis of a mistake.

Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006).  Furthermore, the degree of similarity between the plaintiff and the person to whom the plaintiff compares themselves must be extremely high.  Id.  "This showing is more stringent than that used at the summary judgment stage in the employment discrimination context" because, in a class-of-one case, evidence of similarity is "offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain."  Id.

While Ryan's claim resembles a class-of-one equal protection claim, a plaintiff may not bring such a claim in the public employment context.  In Engquist v. Oregon Department of Agriculture, the Supreme Court held concluded that a "class-of-one theory of equal protection has no application in the public employment context" because "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." Engquist v. Oregon Dep't of Agr., 128 S. Ct. 2146, 2156-57 (2008).  To be sure, even within the employment context, when government makes class-based decisions and treats distinct groups of people differently on a categorical basis, the Equal Protection Clause is implicated.  Nonetheless, recognizing a class-of-one theory in this context "could jeopardize the delicate balance governments have struck between the rights of public employees and the government's legitimate purpose in promot[ing] efficiency and integrity in the discharge of official duties, and [in] maintain[ing] proper discipline in the public service."  Id. at 2156 (internal quotation marks omitted).  Therefore, to the extent

that Ryan's Complaint can be construed to contain a class-of-one equal protection claim, Jaskiewicz is entitled to judgment as a matter of law.

Even if the court were to evaluate Ryan's allegation as a class-of-one equal protection claim, that claim would fail.  Normally, whether two individuals are similarly situated is a fact-intensive inquiry that should be submitted to the jury.  See Cine SK8, Inc., v. Town of Henrietta, 507 F.3d 778 (2d Cir. 2007).  However, a court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation "where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated."  Clubside, Inc., 468 F.3d at 159.  This is such a case.  Ryan has not shown that he "was 'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [him]self."  Graham v. Long Island R .R., 230 F.3d 34, 39 (2d Cir.2000) (discussing "similarly situated" in the Title VII context).  As noted supra at 13, on July 25, 2007, Jaskiewicz informed Ryan that he was terminated for his (1) inability to perform the essential functions of his position in light of the license suspension; (2) postponement of the DMV hearing on multiple occasions; (3) failure to present written notice of the DMV's determination; (4) failure to provide notes from his treating health care provider in a timely manner pursuant to a prior agreement; (5) failure to show participation in an alcohol treatment program; and (6) failure to sign an agreement negotiated on July 9, 2007.  L.R. 56(a)(1) Stmt. at ¶ 46.  Ryan only asserts that Dole was similarly situated to the extent that Dole also was arrested for driving under the influence of alcohol; Ryan has not put forth any evidence, nor even made any allegation, that Dole was similarly situated along the other dimensions that led to Ryan's termination.  Therefore, Jaskiewicz's Motion for Summary Judgment is granted.

-16-

**V.      CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. No.

36) is hereby **GRANTED**.  The clerk is ordered to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of May, 2010.


    /s/ Janet C. Hall          
Janet C. Hall
United States District Judge